OPINION
Appellant, Robin D., and appellee, Steven M., are the parents of two girls, Denee (born August 12, 1988) and Kayleigh (born March 23, 1990). While the parties were married, the family lived in Wichita, Kansas. Pursuant to a 1991 Kansas divorce decree, the parents were granted joint custody, with appellee father designated as the residential parent. During the pendency of the divorce proceedings, the children stayed with various relatives due to the appellant mother's financial condition and alcohol dependency treatment. Father, who had also undergone treatment for alcohol abuse, moved to Seattle, Washington, to live with his cousin.
After the divorce became final, the children, then aged one and one-half and three, were taken to Seattle. From June 1991 until May 1992, father took care of the girls on weekends. However, from Sunday night through Friday, the children lived with two relatives outside Seattle. Father's aunt cared for Kayleigh; mother's sister took care of Denee. Mother, however, did not know of this arrangement until several years later, even though she had maintained weekly telephone contact with the children.
In 1992, father moved to his own apartment with the children and utilized local day care while he was at work. Mother's contact with the girls was sporadic over the next few years as she continued treatment for her alcoholism. Then, in early 1995, she again began to make regular phone calls in an attempt to re-establish her relationship with the children.
In the fall of 1995, father moved to Toledo, Ohio, as he received a company promotion. He did not, however, notify mother of the move; she remained in Wichita. Mother became aware of the address change when a return receipt from a package sent to the children indicated that it had been forwarded to Toledo. Mother also discovered, after the fact, that the children had been in Wichita for Christmas with father's family. It is undisputed that father did not wish the girls to meet with mother and deliberately prevented such contact during the Christmas visit, even though Denee had expressed a desire to see her mother.
During the summer of 1996, the girls vacationed with their two aunts in Washington. Again, although arrangements were made for the girls to see their paternal grandmother who lived in Wichita, no provisions for visitation with the mother were made.
In February 1997, appellant filed a motion in a Kansas court to establish visitation with her daughters and for a change of custody. In response, appellee moved, pursuant to the Uniform Child Custody Jurisdiction Act, to transfer jurisdiction to the Lucas County Court of Common Pleas, Juvenile Division. Ulti mately, the case was transferred with appellee opposing appel lant's motions and moving himself to terminate/modify visitation. A guardian ad litem ("GAL") was appointed to represent the children.
During a hearing conducted by the magistrate, various witnesses testified as to the conflicting facts and circumstances of the parties. Mother presented evidence that father had made visitations difficult, that father had failed to take Kayleigh to the doctor for "sores" on her genital area, and that father still had a drinking problem. Witnesses testified that the children exhibited unusual behaviors, including abnormally aggressive fighting with each other. Testimony was given concerning Kayleigh's "zoning out" and drawing pictures or writing notes with sexually explicit adult themes. Mother presented a psycho logical evaluation which indicated that her alcohol abuse issues were under control and that her household was stable and nurturing.
Father presented testimony that he had custody of the girls since the time of the divorce, that he was unaware of any unusual behaviors by either girl, and that the children were happy and safe with him. He admitted that he still drank occasionally, but denied any problems with alcohol abuse.
The GAL testified that she, the school counselor and a minister had all noticed that father smelled of an alcoholic beverage on the occasions that they had spoken to them about the girls. The GAL recommended that appellant mother be granted custody of both children.
After hearing the evidence, the magistrate found that no changed circumstances existed; therefore, there was no justification for a change in custody. The magistrate then also found that it was in the children's best interest to remain in the custody of their father. In response to appellant's objections, the juvenile court affirmed the magistrate's decision.
Appellant now appeals that decision, setting forth the following two assignments of error:
"ASSIGNMENT OF ERROR NUMBER ONE:
 "THE LOWER COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF APPELLANT WHEN IT FAILED TO FIND SUFFICIENT EVIDENCE TO SUPPORT A CHANGE OF CIRCUMSTANCES.
"ASSIGNMENT OF ERROR NUMBER TWO:
 "THE LOWER COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF APPELLANT WHEN IT FAILED TO FIND THAT MODIFICATION OF CUSTODY WAS NECESSARY TO PROTECT THE BEST INTERESTS OF THE CHILDREN."
We will consider appellant's two assignments of error together. Appellant argues that the trial court erred in failing to find that the evidence showed a change of circumstances or that it was in the best interest of the children to modify custody.
R.C. 3109.04(E)(1)(a) provides that a court shall not modify a prior order of child custody unless "a change has occurred in the circumstances of the child, his residential parent" and that "modification is necessary to serve the best interest of the child." In order to demonstrate a change in circumstances, the movant need not show that the change is detrimental or even substantial. See Davis v. Flickinger (1997),77 Ohio St.3d 415, 418. Rather, the evidence must simply show circumstances which would warrant a change in the prior order. Id.
In determining the best interest of the child, R.C.3109.04(F)(1) provides that the trial court must consider all relevant factors, including, but not limited to:
 "(a) The wishes of the child's parents regarding his care;
 "(b) * * * the wishes and concerns of the child, as expressed to the court;
 "(c) The child's interactions and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 "(d) The child's adjustment to his home, school, and community;
 "(e) The mental and physical health of all persons involved in the situation;
 "(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 "(g) Whether either parent has failed to make all child support payments * * *;
 "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense * * *;
 "(i) Whether the residential parent * * * has continuously and willfully denied the other parent his or her right to visitation * * *;
 "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
Upon review, a trial court's custody determination will not be reversed absent an abuse of discretion. Miller v. Miller
(1988), 37 Ohio St.3d 71, 74. When applying that standard, an appellate court must determine whether the trial court's finding is so contrary to the weight of the evidence that it is unreason able, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
In this case, it is undisputed that, since the first custody order, the children have had two long distance moves, from Wichita to Seattle and then to Toledo. This, by itself could constitute a change sufficient to warrant inquiry into custody issues. See In re: Sydney J. (Jan. 22, 1999), Ottawa App. No. OT-98-023, unreported. However, the record also shows that appellee failed to apprise appellant of the move to Toledo, failed to facilitate visitations when the children were in Wichita, and at times attempted to thwart the re-establishment of the relationship between appellant and the children. Addition ally, there are questions surrounding the father's behavior with the children, including his alleged alcohol abuse, inappropriate discipline methods, and failure to promptly seek medical attention or counseling for the children. Although father was legally designated as the residential parent, the record reveals that before the children entered school, much of the primary caretaking was actually performed by other family members, babysitters, or neighbors.
Mother, on the other hand, presented undisputed evidence that she has been sober since 1994. She also presented evidence that she can provide a stable and healthy environment for the girls. Both the GAL and current treating psychologist in Wichita recommended that the children remain with the mother while certain psychological and behavioral issues could be explored and treated. Finally, the GAL reported that the children felt comfortable in their mother's home and have expressed a desire to remain with her. Therefore, in our view, the trial court abused its discretion in finding that appellant had not established a change of circumstances.
Furthermore, the trial court's judgment contains insufficient findings to indicate that the trial court properly considered all the required factors under R.C. 3109.04(F)(1) in determining that it was in the best interest for appellee to remain the residential parent.[1]
Accordingly, appellant's two assignments of error are well-taken. Appellee's motion to strike appellant's reply brief is not well-taken and is denied.
The judgment of the Lucas County Court of Common Pleas, Juvenile Division is reversed and remanded for proceedings consistent with this opinion. Court costs of this appeal are assessed to appellee.
JUDGMENT REVERSED.
 Melvin L. Resnick, J.
 James R. Sherck, J.
 Richard W. Knepper, J.
CONCUR.
[1] We note that the trial court's conclusion should have ended upon its determination that appellant had not established a change of circumstances. However, the court continued with a determination that it was in the best interest for appellee to retain custody. The record is unclear as to exactly what this best interest determination was based upon, especially since no mention of the GAL's recommendation was made in the decision.